```
           IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
```

**DERRICK ANDRE MYERS,**

            **Plaintiff,**

      **v.**                         **CASE NO. 11-3168-SAC**

**AMY JACKSON, CCS Nurse,**
**El Dorado Correctional**
**Facility, et al.,**

           **Defendants.**

<u>**MEMORANDUM AND ORDER**</u>

This civil complaint was filed pursuant to 28 U.S.C. § 1983, by an inmate of the El Dorado Correctional Facility, El Dorado, Kansas (EDCF). Plaintiff names as defendant Amy Jackson, CCS Nurse, EDCF. He claims that defendant Jackson denied his right to refuse medical treatment and subjected him to excessive force. Having considered all materials filed, the court finds that plaintiff's allegations fail to state a federal constitutional claim. He is given the opportunity to allege additional, sufficient facts or to otherwise show cause why this action should not be dismissed for failure to state a claim.

<u>**MOTION TO PROCEED WITHOUT PREPAYMENT OF FEES**</u>

The fee for filing this civil rights complaint is $350.00. Plaintiff has filed an Application to Proceed Without Prepayment of Fees. He is forewarned that under 28 U.S.C. § 1915(b)(1), being granted leave to proceed without prepayment of fees does not relieve him of the obligation to pay the full amount of the filing fee. Instead, it entitles him to pay the fee over time through payments

automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2).[1]  In addition, a prisoner seeking to bring a civil action without prepayment of fees is required to submit a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined."  28 U.S.C. § 1915(a)(2).

Plaintiff provides financial information, but it is neither certified nor does it appear to have been obtained from the appropriate EDCF official.[2]  More importantly, it does not provide monthly balances from which the court can calculate whether or not an initial partial filing fee should be assessed.  This action will not proceed until plaintiff complies with federal law and provides the certified copy of his inmate account statement.  Mr. Myers is forewarned that if he fails to comply in the time allotted, this action may be dismissed without further notice.

**NON-COMPLIANCE WITH COURT RULE REQUIRING FORM COMPLAINT**

Plaintiff has not properly utilized the forms for filing his complaint or his motion to proceed without fees.  He wrote little on the forms and instead attached narratives.  The court could require that plaintiff submit an amended complaint on properly completed

---

[1] Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is confined is authorized to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

[2] The prisoner must obtain this certified statement from the appropriate official of each prison at which he was or is confined.  Id. ; see also Tyson v. Youth Ventures, L.L.C., 42 Fed .Appx. 221 (10th Cir. 2002); Johnson v. United States, 79 Fed.Cl. 769 (2007).

2

forms; however, it will not do so at this juncture.  Mr. Myers is admonished that he is required to follow the local court rules and Federal Rules of Civil Procedure as well as the directions of the court.

The court has considered plaintiff's Brief, and grants his Motion for Leave to File Brief (Doc. 2).

**ALLEGATIONS AND CLAIMS**

As the factual background for his complaint, Mr. Myers alleges as follows.  On August 13, 2011, he "had his floor staff call a signal medical" four different times.  Each time he "was claiming chest pains."  On the third call, Nurse Jackson gave plaintiff an aspirin "as part of the chest pain protocol" directing him to chew and swallow.  He let Jackson place the aspirin in his mouth, then spit it at her.  He was escorted to his cell, and two to three minutes later he had a fourth signal called.  Again the protocol was followed, again plaintiff spit the aspirin at Jackson and attempted to return to his cell, but Jackson demanded that plaintiff be transported to the clinic.  Plaintiff declared that he "refused medical treatment."  Jackson stated, "You can't refuse, I'm tired of you playing chest pain games and your (sic) going to the infirmary." Plaintiff was never given a waiver form, but has affidavits from two officers and several inmates who witnessed his oral refusal of medical treatment.  One of the officers called the captain's office about the controversy, and Mr. Myers yelled toward the phone a dozen times that he refused medical treatment.  The "special security team was summoned by Captain (name illegible)," and plaintiff was put in restraints, strapped to a restraint chair, and escorted to the

3

clinic where he was forcibly put on a bed. At the clinic, defendant Jackson "vigorously" poked plaintiff multiple times "with an I.V. needle" and wiggled the needle around inside his skin while he was in full restraints and held down by four or five special security officers. A doctor arrived and witnessed Jackson's actions. Plaintiff told the doctor that he had refused "any of this." The doctor spoke with Jackson in the hall. In the meantime, plaintiff pulled the IV needle out of his arm. He bled "profoundly and excessively," and became mentally distraught. He was left with bruises on his arm. After photos were taken of his injuries, he was restrained and returned to his cell.

Plaintiff alleges that Jackson had taken his vital signs and assured him he was fine, that his condition was not life threatening, he was not in severe pain, and "any lay person could have seen that (his) condition did not need" any treatment. He suggests that Jackson could have had him taken to the infirmary for observation, caused him to be disciplined, or sought a court order or doctor's permission to treat.

Plaintiff claims that Jackson abused her authority, and that the IV was unnecessary. At the same time he alleges that the procedure performed was part of the "chest pain protocol." He additionally claims that Jackson acted in a reckless, vindictive, malicious, sadistic manner with intent to inflict pain and harm; retaliated because she was mad and fed up about the inconvenience and disrespect; performed a medical procedure that caused him injury; and that the force used to insert the IV needle was very unprofessional. In addition, he claims that she committed "a form of assault" upon him. He characterizes his own actions as childish,

4

and opines that they did not justify defendant Jackson's acts and even a childish inmate's rights must be respected.

Plaintiff asserts that defendant Jackson acted with deliberate indifference to his right to refuse treatment and subjected him to cruel and unusual punishment and excessive force in violation of his rights under the Eight Amendment. He seeks 1.5 million dollars in punitive damages and "emotional distress damages."

**SCREENING**

Because Mr. Myers is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

**FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Under 42 U.S.C. § 1997e(a), "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court." Id. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id. This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003),

5

cert. denied, 540 U.S. 1118 (2004); Little v. Jones, 607 F.3d 1245, 1249 (10th Cir. 2010). The "inmate may only exhaust by properly following all the steps laid out in the prison system's grievance procedures." Little, 607 F.3d at 1249 (citing Woodford v. Ngo, 548 U.S. 81, 90 (2006). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ." Id. (citing Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)). While failure to exhaust generally is an affirmative defense and a plaintiff is not required to plead it in the complaint, when that failure is clear from materials filed by plaintiff, the court may sua sponte require plaintiff to show that he has exhausted. See Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)(acknowledging district courts may raise exhaustion question sua sponte, consistent with 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. §§ 1915 and 1915A, and dismiss prisoner complaint for failure to state a claim if it is clear from face of complaint that prisoner has not exhausted administrative remedies).

The Kansas Department of Corrections makes a four-step grievance procedure available to its inmates, which must begin with an attempt at informal resolution, and thereafter proceed through three "levels of problem solving." KS ADC 44-15-101, -102. The second level is a grievance submitted to a Unit Team member. KS ADC 44–15–101(d). Next, the inmate may appeal to the Warden, and ultimately to the Secretary of Corrections. Id.

Plaintiff has filed a Motion to Add Exhibits (Doc. 5) in this case, which is granted. He has attached to this motion a response by his Unit Team to his grievance complaining of "misconduct by CCS staff during multiple signal medicals called on 8/13/2011." The

6

response is dated September 26, 2011.  The complaint was filed on September 19, 2011.  Since this was only the second step in the four-step process and it was decided after the complaint was filed, it plainly appears from the materials filed by plaintiff in this case that he did not fully and properly exhaust prison administrative remedies prior to filing this federal court action.

Accordingly, the court finds that plaintiff's § 1983 complaint is subject to being dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii), and 42 U.S.C. § 1997e(c)(1), based on plaintiff's failure to exhaust available administrative remedies prior to filing this action.  Plaintiff is given time to show cause why this action should not be dismissed due to his failure to exhaust.  If he does not show good cause within the time allotted, this action may be dismissed without further notice.

**FAILURE TO STATE A FEDERAL CONSTITUTIONAL CLAIM**

The court additionally finds that the allegations in the complaint, taken as true, fail to state a federal constitutional claim.  "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48-49 (1988)(citations omitted); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Nevertheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to

state a claim upon which relief can be based." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).  The complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  To avoid dismissal, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 555, 570 (citation omitted).  The court accepts all well-pleaded allegations in the complaint as true. <u>Anderson v. Blake</u>, 469 F.3d 910, 913 (10th Cir. 2006).  Still, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. <u>Twombly</u>, 550 U.S. at 558.

**1.  Claim of Denial of Right to Refuse Treatment**

Plaintiff's "formulaic recitations" of terms like "deliberate indifference," from denial of medical treatment cases, do not apply to this claim because plaintiff is not alleging that he was denied necessary medical treatment.  Instead, he asserts that he had a constitutional right to refuse medical attention and that Jackson violated that right.

Plaintiff's allegations made to support this claim, even viewed as true and favorably to him, do not evince a violation of an established federal constitutional right.  Plaintiff presents

8

neither compelling factual circumstances nor convincing legal authority establishing that he had a federal constitutional right to refuse to submit to a simple, one-time, diagnostic blood test.  In Washington v. Harper, 494 U.S. 210, 221 (1991), the United States Supreme Court analyzed substantive and procedural standards being applied to justify forced medication with psychotropic drugs in the context of the prison environment under the due process clause of the Fourteenth Amendment.  The Court noted, even in those much more complicated and serious circumstances, that inmate interests may be adequately protected by allowing medical professionals to make the decision to medicate.  Id. at 227-232.

Here, the decision to draw some of plaintiff's blood for diagnostic testing was made by a medical professional who had sound reasons for her decision.  As noted, on that day, Mr. Myers sought emergency medical care four times for chest pains.  He refused to swallow aspirins that he admits were given in accord with medical protocol.  Nurse Jackson's decision to obtain a diagnostic blood test was also proper medical procedure, after plaintiff had repeatedly reported symptoms that could indicate a life-threatening medical condition.  The court finds as a matter of law that Mr. Myers has not establish that he had a constitutional right to refuse a simple, one-time blood test under these circumstances. Nor has he established that any constitutional right was violated by defendant Jackson's attempt to follow medical protocol with this test.  See Sconiers v. Jarvis, 458 F.Supp. 37, (D.Kan. 1978)(Officials charged with responsibility to provide for medical treatment of prison inmates have a constitutional duty to provide necessary medical treatment regardless of consent); Davis v. Agosto, 89 Fed.Appx. 523

9

(6th Cir. 2004)(unpublished)[3](It was well within the authority of prison medical officials to determine that closing a wound was necessary to the health and safety of an inmate; and had they opted in the face of the inmate's objection not to provide this treatment, they could have subjected themselves to a deliberate indifference claim.).

### 2. Claim of Cruel and Unusual Punishment/Excessive Force

Plaintiff alleges that defendant Jackson improperly had him transported to the infirmary and "vigorously" poked him "numerous times" while attempting to insert an IV needle into his arm. He asserts that her acts amounted to excessive force prohibited by the Eighth Amendment.

"After incarceration," the Eight Amendment prohibits "the unnecessary and wanton infliction of pain" on prisoners. Whitley v. Albers, 475 U.S. 312, 319 (1986). To state a claim of excessive force, a plaintiff must allege facts plausibly showing that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed to plaintiff, and actually drew the inference. Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003); see also Self v. Crum, 439 F.3d 1227, 1231 (10th Cir. 2006); Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1154-55 (10th Cir. 2006). Deference is accorded to the prison official in reviewing excessive force claims, and the case should not go forward, unless the evidence "will support a

---

[3] Unpublished opinions cited herein are not cited as binding precedent but for persuasive value only in accord with Fed.R.App.P. 32.1 and 10th Cir.R. 32.1).

10

reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322. The Tenth Circuit has set forth two "prongs" a plaintiff must show to prevail on an excessive force claim: (1) that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and (2) that the defendant official "acted with a sufficiently culpable state of mind." Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003). A balancing test may be used to determine if force was excessive, in which one factor to consider is the extent of the inmate's injuries. Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Plaintiff's allegations are insufficient to establish either prong. His description of his own injury as bruising on his arm does not establish that he was subjected to wrongdoing "harmful enough to establish a constitutional violation." There is no indication that he required any follow-up care or has lasting pain or injury. The insertion of an IV needle into an arm to draw blood for diagnostic testing is not shown to be a type of medical treatment or procedure that intrinsically poses a substantial risk of serious harm. Nor is any reason suggested for Nurse Jackson to have perceived that it presented such a risk. Plaintiff's injury is certainly not shown to have resulted from an intentional attack by Nurse Jackson involving "wantonness in the infliction of pain." Bruising on the arm is the type of injury that minght result from an IV under normal circumstances. Plaintiff's allegations that he was in restraints as well as held down by 4 or 5 security officers plainly indicate that he was resisting at the time Nurse Jackson was inserting the IV needle. Bruising is a likely result when an inmate patient resists and struggles with security officers during the

11

insertion of an IV needle, and then pulls the IV from his own arm.

Plaintiff is not entitled to money damages where the injury he describes indicates nothing more serious than might be expected from the generally innocuous blood test that was medically indicated. This is particularly true where he greatly increased his chance of injury by resisting for no apparent reason other than to harass prison medical staff; and even pulled out his own IV. Mr. Myers' own misconduct mitigates against an award of damages in this case. See Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir. 1992). Balancing the extent and circumstances of plaintiff's injury with the deference to be given prison officials in their need to maintain control over a disruptive prisoner and their duty to provide medical care to inmates, the court has no difficulty concluding that the allegations in this case do not give rise to a plausible inference of wantonness in the infliction of pain. In fact, construing plaintiff's allegations with the utmost liberality, they appear to state nothing more than a tort claim, which is not grounds for relief in federal court under 42 U.S.C. § 1983.

Plaintiff's factual, as opposed to his conclusory, allegations also utterly fail to demonstrate that defendant Jackson acted with a sufficiently culpable state of mind. No facts are alleged indicating that Jackson had any knowledge of and yet disregarded "a substantial risk of serious harm" to plaintiff's health or safety from the insertion of an IV. See Farmer v. Brennan, 511 U.S. 825, 842 (1994). Plaintiff does not allege that Jackson's conduct in ordering a blood test deviated from a medically-established standard of care. See Van Riper v. Correctional Medical Services, 44 Fed.Appx. 445, 447 (10th Cir. 2002)(unpublished). Nor could he,

after he repeatedly stated to the nurse responsible for his medical care that he was having symptoms of a type that all medical staff are trained to view as potentially life-threatening.  Standards of nursing care have been found to require "that any complaint of chest pain be treated as a major medical emergency until such time as cardiac involvement has been ruled out" by a medical professional. See Mata v. Saiz, 427 F.3d 745, 757 (10th Cir. 2005); Self, 439 F.3d at 1232.

In this case, Nurse Jackson did not forcibly administer long-term treatment, like psychotropic drugs that have serious side effects, without plaintiff's consent.  There are no facts to suggest that she knew an IV blood test presented a substantial risk to Mr. Myers' health or safety.  Her attempt to administer a diagnostic blood test under the circumstances was unquestionably consistent with good medical practice.  See Washington, 494 U.S. at 235 n. 13. Plaintiff's allegations indicate that defendant Jackson was confronted with a difficult situation entirely of plaintiff's making, and that she acted in an appropriate manner for the symptoms presented by the patient.  The various labels that plaintiff attaches to Jackson's actions, such as malicious and sadistic, are completely conclusory.  They are not allegations of fact showing that defendant consciously subjected him to a substantial risk of serious harm.

Plaintiff's claim of retaliation is likewise not supported by sufficient facts.  Such a claim requires that the plaintiff allege "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  Mr. Myers' essentially "crying wolf"

13

four times in a state prison and then twice spitting properly prescribed medication at the nurse answering his calls for medical attention can hardly be considered engaging in a constitutionally protected activity. Certainly, it was not exercising a constitutional right that survived his incarceration in state prison.

Plaintiff is given time to show cause why his claims should not be dismissed for the reasons stated herein. If he fails to show good cause within the time allotted, this action may be dismissed without further notice.

**OTHER PENDING MOTIONS**

The court has considered plaintiff's Motion to Appoint Counsel (Doc. 4) and finds it should be denied. There is no right to appointment of counsel in a civil action for money damages. In any event, it does not appear that this case will survive screening, and the appointment of counsel at this juncture would not serve the interests of justice.

The court has considered plaintiff's Motion for Discovery (Doc. 6), and finds it should be denied. This motion is premature. Moreover, plaintiff does not show that he has made any effort to obtain the statements and materials he seeks by any other appropriate means. Nor does he show that he has followed proper procedures in seeking an order to compel disclosure.

The court has considered plaintiff's Motion to Amend (Doc. 7), and finds it is nothing more than a motion to correct the caption on two other of his motions. Plaintiff neither properly nor effectively amended his complaint to name James Himesgartner as a

defendant herein by simply including his name in captions on two motions.  In order to add or change a defendant, a plaintiff must submit a complete, amended complaint.  The court grants this motion only to the extent that it changes the captions on Doc. 4 and Doc. 5 to reflect the correct defendant.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted twenty (20) days in which to provide a certified statement of his inmate account that complies with 28 U.S.C. § 1915(a)(2).

**IT IS FURTHER ORDERED** that within the same twenty-day period plaintiff is required to show cause why this action should not be dismissed for failure to fully exhaust the available administrative remedies on his claims and for failure to state a federal constitutional claim.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to File Brief (Doc. 2), Motion to Add Exhibits (Doc. 5), and Motion to correct captions of other motions (Doc. 7) are granted; and plaintiff's Motion to Appoint Counsel (Doc. 4) and Motion for Discovery (Doc. 6) are denied, without prejudice.

**IT IS SO ORDERED**.

Dated this 18th day of January, 2012, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge
