## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DERRICK ANDRE MYERS,

                    **Plaintiff,**

          v.                              CASE NO. 11-3168-SAC

AMY JACKSON, CCS Nurse,
El Dorado Correctional
Facility, et al.,

                    **Defendants.**

## O R D E R

On January 18, 2012, the court screened the complaint in this action and found that plaintiff's allegations failed to state a federal constitutional claim and that it appeared from materials filed by plaintiff that he had failed to exhaustion prison administrative remedies.  Mr. Myers was given the opportunity to allege additional, sufficient facts or to otherwise show cause why this action should not be dismissed on these grounds.  In addition, the court found that plaintiff had failed to provide the requisite financial information in support of his motion to proceed without prepayment of fees.  Plaintiff was ordered to provide a certified copy of his inmate account statement for the appropriate time period.

Plaintiff has since filed documents he entitled Motion for Reconsideration (Doc. 10) and Motion for Leave to file Memorandum (Doc. 11); a prisoner account statement (Doc. 12);

and a Notice of Interlocutory Appeal.  His interlocutory appeal has already been dismissed by the Tenth Circuit Court of Appeals.  Having considered plaintiff's pending filings together with the entire file, the court finds as follows.

Plaintiff's "Motion for Reconsideration" and "Motion to File Memorandum" are actually his response to the court's screening Memorandum and Order.  In his "Motion for Reconsideration," he presents his arguments and exhibits on the exhaustion issue and asks the court to find that he has shown cause as to why this action should not be dismissed for failure to exhaust.[1]  In his "Motion to File Memorandum" plaintiff presents arguments and authorities to "show cause why his (complaint) should not be dismissed for failure to state a claim."[2]  These two "motions" are liberally construed and considered as plaintiff's response to the court's screening order.


**PLAINTIFF FAILS TO SHOW EXHAUSTION**

Plaintiff was informed in the screening order that under 42 U.S.C. § 1997e(a), a prison inmate must exhaust his

---

[1]    Plaintiff does not request reconsideration of any particular court ruling.  The motion for reconsideration in this pleading, if any, is denied because plaintiff presents no grounds for reconsideration of this court's non-dispositive order.

[2]    Plaintiff's request to file the memorandum that is itself included in this motion is granted, even though this is a frivolous motion since plaintiff was ordered to respond.

administrative remedies prior to filing a federal lawsuit and that the district court is not authorized to dispense with this mandatory requirement. He was also informed that in order to exhaust, an inmate must properly follow all the steps laid out in the prison's grievance procedures. Plaintiff was also reminded that the four-step grievance procedure made available to Kansas Department of Corrections inmates must begin with an attempt at informal resolution and then proceed through three levels, with Level 1 being a grievance submitted to a Unit Team member and Levels 2 and 3 requiring the inmate to appeal first to the Warden and ultimately to the Secretary of Corrections. Neither of the Kansas regulations cited in the screening order requires a response within ten days.

Upon screening, the court found that failure to exhaust plainly appeared from plaintiff's exhibit of a Unit Team (Level 1) administrative response that is dated after the complaint was submitted herein. Plaintiff argues in his response that his complaint should not be dismissed for failure to exhaust because he "attempted several times to exhaust" but his grievances were ignored. He further alleges that he "even wrote a grievance about not receiving his grievances in a timely manner" and that "a response was finally made and received" by him. He has attached seven "forms and grievances" to his "Motion to Reconsider."

Plaintiff's first attached exhibit is a Form 9 "Inmate Request to Staff Member" (IR) addressed to the Unit Team dated August 28, 2011. In this grievance plaintiff referred to a prior grievance that he alleged had been received by Mrs. Austin on August 15, 2011. He asked the Unit Team to check whether Austin had responded. The disposition was: "I am waiting on her response." Nowhere in this grievance is there any indication as to the content of the prior grievance. This exhibit does not show that plaintiff fully exhausted the claims in his complaint.

Plaintiff's second exhibit is another IR addressed to "CCS" that is dated September 11, 2011. Therein, plaintiff stated: "This is my second request to know the progress of a grievance form that was forwarded to your office on or about August 15th." He asked for a response to his earlier grievance without revealing its content. The disposition dated September 19, 2011, provided: "Your grievance was addressed in a timely manner." This exhibit does not show that plaintiff exhausted all steps of the administrative remedy process on the claims raised in his complaint. Moreover, contrary to plaintiff's conclusory allegations, it indicates that his initial grievance was timely addressed.

Plaintiff's third exhibit is another IR that is addressed to Unit Team Pyles. This grievance is dated September 20, 2011, which is the day after plaintiff executed the complaint he filed

in this action.  This exhibit does not establish that plaintiff fully exhausted prior to filing this action.

Plaintiff's fourth exhibit is an IR addressed to CCS and dated September 2, 2011, asking about "a grievance form forwarded to you by Mrs. Austin . . . around the 15th of August" that was "pertaining to one of your staff's misconduct." Plaintiff asked for an explanation as to why the 10-day deadline had not been met and he had received no response.  The disposition dated September 15, 2011, provided:  "Your grievance was addressed in a timely manor (sic)."

Plaintiff's fifth exhibit is an Inmate Grievance Form/Inmate Complaint (IG) dated September 16, 2011.  Therein, plaintiff complained about a "big problem" with the processing of grievances in B cellhouse.  In support, he stated that he had written "numerous grievances" and not received any back.  He asked that "this misconduct" be investigated.  The Unit Team Response dated September 21, 2011, was:  "You were just returned 3 grievances.  Hopefully this will resolve your issue."  This grievance again dealt with plaintiff's not receiving responses to unspecified grievances.  It does not show full and proper exhaustion on the claims raised in this action.

Plaintiff's sixth exhibit is another IG that is dated September 14, 2011.  In this grievance, plaintiff more specifically referred to a grievance "involving the misconduct

of a CCS Staff Member (Amy Jackson)," but his request was only that the ten-day time limit on the form be enforced.   Again, this exhibit does not show that plaintiff properly followed all four steps of the grievance procedure.

Plaintiff's seventh exhibit is a Response from the Warden stating that he had reviewed Myers's grievance "along with the response provided by Unit Team Manager Mr. Walmsley" and found "no further local action is necessary."   The substance of the grievance considered by the Warden is not provided.   In any event, plaintiff does not provide a copy of any appeal form that he sent to the Secretary of Corrections or a decision at that level.

Plaintiff's eighth exhibit is another IG that is dated August 30, 2011.   In this grievance, plaintiff complained that a grievance he filed on August 15, 2011, was returned in 17 instead of 10 days.   He asked that Mrs. Austin "be held accountable" for not following policy.   Again, this grievance does not establish that plaintiff exhausted on the claims in his complaint.[3]

In his response, plaintiff also refers to a memo attached to his Motion to Add Exhibits (Doc. 5), which was filed on

---

[3]   A prison inmate does not exhaust administrative remedies by blitzing the prison administration with numerous additional grievances complaining about the handling of an initial grievance where, as here, there has been no inordinate delay as to a non-emergency matter.

October 13, 2011.  This Exhibit "A(1)" is an "Interdepartmental Memorandum" by Todd Weldon of El Dorado Correctional Facility Correct Care Solutions.  Therein, Weldon stated that the "inmate complains of misconduct by CCS staff during multiple signal medicals called on 8/13/2011."  The "findings of fact" include that the inmate "called multiple signal medicals and each time attempts were made by nurse to follow protocol," he refused, "thus terminating the signal."  The disposition was: "Further administrative action regarding this matter is not required." This memo does not establish full exhaustion.  Moreover, as the court noted in its prior order, it is dated after the complaint.

The court has no difficulty concluding that plaintiff has not shown that he proceeded in an orderly manner to first attempt informal resolution and then submit grievances at Levels 1, 2, and 3 based upon the claims in his complaint against defendant Jackson before he filed this civil action. Accordingly, the court finds that this complaint must be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii), and 42 U.S.C. § 1997e(c)(1), on account of plaintiff's failure to exhaust.

**PLAINTIFF FAILS TO STATE A FEDERAL CONSTITUTIONAL CLAIM**

Even if plaintiff's exhibits could somehow be held to show exhaustion or he completed exhaustion after filing his

complaint, this action must still be dismissed.  This is because Mr. Myers has failed to allege additional facts sufficient to state a plausible federal constitutional claim.  Plaintiff seeks damages in excess of a million dollars based upon assertions that defendant Jackson violated his right to refuse medical treatment and subjected him to cruel and unusual punishment and excessive force in violation of the Eighth Amendment.

The court found in its screening order that Mr. Myers presented neither compelling factual circumstances nor convincing legal authority establishing that he had a federal constitutional right to refuse to submit to a simple, one-time, diagnostic blood test under the circumstances alleged by him in his complaint.  As the court stated:

> Here, the decision to draw some of plaintiff's blood for diagnostic testing was made by a medical professional who had sound reasons for her decision. As noted, on that day, Mr. Myers sought emergency medical care four times for chest pains.  He refused to swallow aspirins that he admits were given in accord with medical protocol.  Nurse Jackson's decision to obtain a diagnostic blood test was also proper medical procedure, after plaintiff had repeatedly reported symptoms that could indicate a life-threatening medical condition.

Plaintiff alleges no additional facts to support a claim that his federal constitutional rights were violated.  Instead, he argues that his right to refuse medical treatment is most sacred at the same time that he continues to ignore that he reported life-threatening symptoms and demanded medical

attention four times in a single day even though he had no medical problem throughout the incident.  There is no suggestion that Mr. Myers reported serious symptoms and demanded and then refused treatment for any reason other than to harass medical staff.  To his credit, he admits that his behavior was childish. If plaintiff's professed interest in his bodily integrity so far-outweighed his need for medical attention, he could have easily maintained that integrity by refraining from falsely reporting life-threatening symptoms to persons charged with providing him with necessary medical care.

Nor does plaintiff allege any additional facts showing that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  Plaintiff's allegations that he was administered a simple blood test under the unusual circumstances created by him and that his arm was bruised after he pulled out an IV are clearly not of constitutional magnitude. The court is not convinced otherwise by plaintiff's allegations in his response.  His allegation that defendant's actions violated KDOC policy is a matter of state law that is not cognizable under § 1983.

Plaintiff has alleged no additional facts plausibly showing that defendant Jackson acted with a sufficiently culpable state of mind.  His allegations that Jackson's vindictiveness clouded her judgment and that she acted with an evil state of mind are,

like those in his complaint, nothing more than conclusory statements. He still alleges no facts indicating that Jackson was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed to plaintiff from the insertion of an IV and actually drew the inference. The court remains convinced that balancing the extent and circumstances of plaintiff's injury with the deference to be afforded prison officials in their duties to maintain control over a disruptive prisoner and provide medical care to inmates, the allegations in this case do not give rise to a plausible inference of wantonness in the infliction of pain. The court concludes that plaintiff fails to state a constitutional claim and that this action is frivolous and malicious. This action counts as a strike against Mr. Myers.[4]

**FILING FEE ASSESSED**

---

[4]    Section 1915(g) of 28 U.S.C. provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

If plaintiff acquires two more strikes he will be required to "pay up front for the privilege of filing . . . any additional civil actions" unless he can demonstrate "imminent danger of serious physical injury."

Plaintiff has filed a Motion for Leave to Proceed without Prepayment of Fees (Doc. 3) and, after being ordered to do so, has provided an Inmate Account Statement in support as statutorily mandated.  As plaintiff was warned, under 28 U.S.C. § 1915(b)(1) being granted such leave does not relieve him of the obligation to pay the full fee of $350.00 for filing this civil action.  Instead, it merely entitles him to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by § 1915(b)(2). Plaintiff's motion is granted, and he is assessed the full filing fee to be paid in installments.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's Application to Proceed without Prepayment of Fees (Doc. 4) is granted and he is assessed the filing fee of $350.00.  The Finance Office of the Facility where plaintiff is currently confined is directed to collect from plaintiff's account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until plaintiff's outstanding filing fee obligation has been paid in full.  Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the

custodian or any future custodian to disburse funds from his account.

**IT IS FURTHER ORDERED** that plaintiff's request in Doc. 11 to file his memorandum is granted; that his Motion for Reconsideration in Doc. 10, if any, is denied; and that Docs. 10 and 11 have been construed and considered as plaintiff's response to the court's prior Memorandum and Order.

**IT IS FURTHER ORDERED** that this action is dismissed for failure to show exhaustion of administrative remedies, failure to state a federal constitutional claim, and as frivolous and malicious.

The clerk is directed to send copies of this order to plaintiff, the court finance office, and  the financial officer at the institution where plaintiff is currently confined.

**IT IS SO ORDERED.**

Dated this 23rd day of August, 2012, at Topeka, Kansas.

**s/Sam A. Crow**
**U. S. Senior District Judge**